In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-02-00200-CR


______________________________




RONNIE JOE NEAL, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 4th Judicial District Court


Rusk County, Texas


Trial Court No. CR01-076




 






Before Morriss, C.J., Carter and Grant,* JJ.

Opinion by Justice Grant



______________

*Ben Z. Grant, Justice, Retired, Sitting by Assignment


O P I N I O N



 Ronnie Joe Neal appeals from his conviction by the trial court for possession of a deadly
weapon in a penal institution. The trial court sentenced Neal to six years' imprisonment.

 Neal contends that his conviction violated the Double Jeopardy Clause, that the trial court
erred by failing to grant his motion to quash the indictment, and that the conviction was in violation
of his rights because of prosecutorial vindictiveness.

 A review of the background to this case is critical to understanding this prosecution. While
incarcerated, and two months after he was convicted on the underlying offense, the State indicted
Neal on September 9, 1998, for possession of a weapon in a penal institution. Two years later, on
November 13, 2000, Neal signed a plea bargaining agreement (also signed by the State) agreeing to
accept two years' confinement on that charge. He was bench warranted to Rusk County for the plea
hearing. However, on the date of the hearing, defense counsel discovered that Neal had been
returned from the Rusk County Jail to the Texas Department of Criminal Justice for medical reasons. 

 Thereafter, on November 17, 2000, the State's attorney filed a motion to dismiss the
prosecution.

 Four months later, on March 6, 2001, the State reindicted Neal for the same offense. 

 The evidence shows that on May 20, 2000, Neal had filed a federal lawsuit against Rusk
County alleging violations of civil rights. On February 28, 2001, the federal court held a one-day
trial. Six days later, on March 6, the State reindicted Neal. It is unclear when judgment was
rendered in the case, but Neal testified he received the "lawsuit packet" on April 19, documenting
he had won a $6,000 judgment, and he testified Rusk County had paid the judgment. 

DOUBLE JEOPARDY

 Neal first contends this prosecution should have been terminated because the conviction was
obtained in violation of the Double Jeopardy Clause of the United States Constitution. (1)
 The Double
Jeopardy Clause protects against the risk of multiple punishments for the same offense and against
the risk of successive prosecutions. United States v. Dixon, 509 U.S. 688, 695-96 (1993). Generally,
however, the State is free to dismiss an indictment and reindict without implicating the constitutional
prohibition against double jeopardy. Proctor v. State, 841 S.W.2d 1, 3 (Tex. Crim. App. 1992);
State v. Roberts, 932 S.W.2d 700, 702 (Tex. App.-Tyler 1996, no pet.); Serna v. State, 882 S.W.2d
885, 888 (Tex. App.-Corpus Christi 1994, no pet.).

 The key question is whether the dismissal occurs after jeopardy attaches. If, after jeopardy
attaches, a charge is dismissed, waived, or abandoned, the State is barred from later relitigating those
allegations. State v. Florio, 845 S.W.2d 849, 852 (Tex. Crim. App. 1992); Ex parte Preston, 833
S.W.2d 515, 517 (Tex. Crim. App. 1992). Jeopardy attaches when the jury is empaneled and sworn,
Hill v. State, 90 S.W.3d 308, 313 (Tex. Crim. App. 2002), or for bench trials, when both sides have
announced ready and the defendant has pleaded to the charging instrument. See Ortiz v. State, 933
S.W.2d 102, 105 (Tex. Crim. App. 1996); Preston, 833 S.W.2d at 518; State v. Henry, 25 S.W.3d
260, 263 (Tex. App.-San Antonio 2000, no pet.).

As applied:

 In this case, the evidence shows that even though the State had signed a plea bargaining
agreement, Neal was sent back to prison without the knowledge of the trial court or his lawyer before
the plea of guilty was taken. Under the cases cited above, jeopardy did not attach, and his double
jeopardy argument therefore fails.

MOTION TO QUASH

 Neal next contends the trial court erred by denying his Motion to Quash the indictment. Neal
argues the court erred by denying his motion-not on the merits of his double jeopardy
contention-but because it was properly a pretrial motion that was not timely filed.

 The hearing covers a number of items, but focuses on the fact that Neal had been indicted
previously for the offense and that the indictment had been dismissed. Although the trial court wrote
a letter stating it had denied the motion because it was untimely filed under Tex. Code Crim. Proc.
Ann. art. 28.01 (Vernon 1989), the order merely states that the motion was denied.

 The State takes the position that Neal's motion is purely pro forma and that it does not raise
double jeopardy claims. This is incorrect. The motion contains several parts, one of which focuses
clearly and with specificity on Neal's claim that double jeopardy should apply and that the
prosecution should therefore be terminated. 

 A double jeopardy claim may be raised for the first time on appeal or in a collateral attack
when the undisputed facts show the double jeopardy violation is clearly apparent on the face of the
record and when enforcement of usual rules of procedural default serves no legitimate State interests. 
Gonzalez v. State, 8 S.W.3d 640, 643 (Tex. Crim. App. 2000); Duvall v. State, 59 S.W.3d 773,
776-77 (Tex. App.-Austin 2001, pet. ref'd). 

 This Court has recently discussed Gonzales in Barnett v. State, 83 S.W.3d 810, 813 (Tex.
App.-Texarkana 2002, no pet.). We recognized there that the type of double jeopardy claim being
asserted, as in this case, is "successive prosecution for the same offense." Bauder v. State, 921
S.W.2d 696, 697 (Tex. Crim. App. 1996). 

 Motions are to be analyzed not simply by their titles, but by their contents. In other words,
a court should look to a motion's content rather than its title to determine its nature. See Tex. Code
Crim. Proc. Ann. art. 1.27 (Vernon 1977); Tex. R. Civ. P. 71; In re B.O.G., 48 S.W.3d 312, 316
(Tex. App.-Waco 2001, pet. denied); Wilson v. Kutler, 971 S.W.2d 557, 559 (Tex. App.-Dallas
1998, no pet.); Matz v. Bennion, 961 S.W.2d 445, 452 (Tex. App.-Houston [1st Dist.] 1997, writ
denied); Hodge v. Smith, 856 S.W.2d 212, 214 n.1 (Tex. App.-Houston [1st Dist.] 1993, writ
denied). 

 In this case, we have already reviewed the double jeopardy contention, and we have found
it to be without merit. Thus, the trial court did not err in overruling the motion.

PROSECUTORIAL VINDICTIVENESS

 Neal further contends the second prosecution is the result of prosecutorial vindictiveness. 
The following dates are relevant to our discussion of this issue:

Relevant Dates

June 16, 1998 Neal possessed sharpened toothbrush while in Rusk County jail.


September 9, 1998 Neal indicted for possession of a deadly weapon, to wit: sharpened
toothbrush, in a penal institution.


May 20, 2000 Neal filed federal suit against the county for alleged civil rights violations
while in jail.


November 13, 2000 Parties signed plea bargaining agreement on the possession of a deadly
weapon charge agreeing that Neal would receive two years in the
penitentiary.


On or about 

November 14-16, 2001 Neal returned to the penitentiary without a hearing and without notice
to his attorney.


November 17, 2001 Deadly weapon charge dismissed by the State because, "The Defendant was
convicted in another case."


February 28, 2001 One-day trial held in federal court on the civil suit brought by Neal.


March 6, 2001 (2) Neal reindicted in Rusk County on the deadly weapon charge (#2001-076).


April 19, 2001 Neal received notice that he won the federal lawsuit judgment against the
county for $6,000.00 for treatment while he was in jail.


August 15, 2002 Neal pleads "not guilty" at a bench trial, and punishment assessed at six years
in the penitentiary.


 In the present case, the State is accused of acting in a vindictive manner because Neal filed
and won a civil lawsuit against Rusk County for acts that occurred while he was in the Rusk County
jail.

 One of the earliest, perhaps the first case, to recognize prosecutorial vindictiveness was North
Carolina v. Pearce, 395 U.S. 711 (1969). This case held that the Fourteenth Amendment was
applicable to the states and forebade multiple punishments for the same offense.

 The underlying rule of law is set out in Bordenkircher v. Hayes, 434 U.S. 357 (1978). 

 To punish a person because he has done what the law plainly allows him to
do is a due process violation of the most basic sort, and for an agent of the State to
pursue a course of action whose objective is to penalize a person's reliance on his
legal rights is "patently unconstitutional."


Id. at 363 (citations omitted).

 Cases in other jurisdictions applying this rule involve reprosecutions or reindictments of
individuals following their successful appeals and choices made by prosecutors to change the
prosecutions to include enhancements, additional charges, or the like.

 For example, in Blackledge v. Perry, 417 U.S. 21 (1974), the United States Supreme Court
used the rationale of Pearce, 395 U.S. 711, to hold that a State may not bring a charge that is more
severe after a defendant has had his or her conviction overturned on appeal. Blackledge, 417 U.S.
at 29-30. The Court reasoned that 

 A person convicted of an offense is entitled to pursue his statutory right to a trial
de novo, without apprehension that the State will retaliate by substituting a more
serious charge for the original one, thus subjecting him to a significantly increased
potential period of incarceration. 

Id. at 28. In such a situation, it is not necessary to prove malice or bad faith on the part of the
prosecutor. Id. at 27; Doherty v. State, 892 S.W.2d 13, 15 (Tex. App.-Houston [1st Dist.] 1994, pet.
ref'd).

 In all such situations, the decision as to whether prosecutorial vindictiveness exists must be
decided on a case-by-case basis, based on each individual record. Lopez v. State, 928 S.W.2d 528,
533 (Tex. Crim. App. 1996); Godsey v. State, 989 S.W.2d 482, 495 (Tex. App.-Waco 1999, pet.
ref'd). 

 These types of cases usually have in common the fact that they involve a change made by the
State, in the exercise of its discretion, in the nature of a reindictment resulting in imposition of a
heavier sentence on a defendant. The ultimate question is whether those changes were the result of
vindictive behavior by the State, or whether the State's actions in making those changes were
otherwise supportable. The principle is the same when a criminal punishment is given because of
the filing of civil actions for violations of civil rights.

 In United States v. Mahdi, 777 A.2d 814 (D.C. App. 2001), a similar situation was also
discussed. In that case, an indictment was dismissed, the defendant filed a civil lawsuit, and the
State then refiled the indictment (with a higher charge added). The trial court dismissed the
additional charge based on vindictiveness, but allowed the original charge to continue. 

 The appellate court acknowledged the authority concerning changes resulting from plea
negotiations (and their failure), but then stated that because the State admitted "accelerating" the
procedure of reindictment after learning of the civil suit, and the addition of new charges, there was
evidence to show an appearance of vindictiveness and a "realistic likelihood" of vindictiveness. 

 However, after reviewing the testimony, the appellate court reversed the trial court, stating
that the presumption of vindictiveness was adequately rebutted by the State's testimony explaining
that the original dismissal was due to procedural errors in its office and that the intention to pursue
both charges had existed before trial. In doing so, the court also acknowledged Goodwin's
recognition that the State has leeway to add charges before trial. 

 Finally, as pointed out in Watson v. State, 760 S.W.2d 756, 759 (Tex. App.-Amarillo 1988,
pet. ref'd), the

 Hostility of a prosecutor towards a defendant is not, in and of itself, the constitutional
equivalent of prosecutorial vindictiveness. The adversarial nature of every
prosecution involves hostility to a greater or lesser degree. The essence of
prosecutorial vindictiveness is retaliation by a prosecutor against a defendant for the
defendant's exercise of a constitutional or statutory right, and the chilling effect that
such retaliation has on the free exercise of those rights.


 The record in this case shows that possession of a weapon in a penal institution had been
charged, but dismissed. The evidence also shows that the same charge was brought again after the
civil lawsuit was tried. 

 The prosecutor testified that he did not reindict because the sheriff's office demanded it, but
then backed off that position to state that the sheriff's office indicated it objected to the dismissal. 
Officer Jerry Kesinger, the jail administrator, testified that Neal, while he had been in his custody
before his 1998 conviction, had written letters in which he attempted to convince a girlfriend to
smuggle a pistol into the jail. Kesinger also testified he had no knowledge of any bad acts by Neal
while Neal was in jail or prison after that time.

 We must first determine whether there was sufficient evidence to raise a presumption or
reasonable inference of vindictiveness. An appellate court must examine the State's conduct in light
of the entire proceeding to determine whether it gives rise to a presumption of vindictiveness. Id. 
It is not necessary to prove malice or bad faith to show vindictiveness. Doherty, 892 S.W.2d at 16
(motion for rehearing and petition for discretionary review was refused). In trying the issue of
vindictiveness, the burden of proof by preponderance of the evidence is on the defendant who raises
the affirmative defense. United States v. Krezdorn, 718 F.2d 1360, 1365 (5th Cir. 1983).

 In determining whether there is to be a presumption of unconstitutional prosecutorial
vindictiveness, appropriate inquiries must be made of whether the situation is one in which there
exists a substantial or realistic likelihood of such a motive. For example, after the defendant's prior
exercise of a procedural substantive legal right, the State arguably acts to punish exercise of such
rights, such actions give rise to a rebuttable presumption of vindictiveness. United States v. Johnson,
91 F.3d 695 (5th Cir. 1996); United States v. Ward, 757 F.2d 616, 620 (5th Cir. 1985).

 It is the timing in the present case that gives rise to an inference or presumption of
prosecutorial vindictiveness. The case had been dismissed and was not refiled until after Neal went
to trial and was awarded damages for violations of his civil rights against Rusk County. This newly-filed action for the same charge that had been dismissed resulted in an increase from the original plea
bargaining agreement of two years to a sentence of six years. The delay caused by the dismissal
further denied Neal the time he could have had running concurrently with the underlying sentence.

 Generally, the presumption of prosecutorial vindictiveness arises only when a defendant has
exercised some constitutional right (usually an appeal), and thereafter the State files a more serious
charge. "A person convicted of an offense is entitled to pursue his statutory right to a trial de novo,
without apprehension that the State will retaliate by substituting a more serious charge for the
original one, . . . ." Blackledge, 417 U.S. at 28 (emphasis added). Some cases have indicated that
the filing of a more serious charge is required to invoke a presumption of vindictiveness. See, e.g.,
Neal v. Cain, 141 F.3d 207, 214 (5th Cir. 1998). Even though the charges are exactly the same in
this case, the reasoning still applies. The sequence of events was that the State dismissed Neal's
charge completely, the civil suit was heard, and then the State refiled the same charge. So in this
case, Neal's position changed from being free from all charges to being subjected to a newly-filed
charge-hence the "same" charge (as the original one) is "more serious" (than no charge at all). 

 This case does not fit neatly with most prosecutorial vindictiveness cases, as they usually
involve an appeal from an original charge and then a filing of a more serious one. However, in those
cases, the defendant still has a charge pending even after the case has been remanded for retrial. It
is the filing of more serious charges that invokes the presumption in those cases. Here, before the
civil suit trial, Neal had no charge pending. Because Neal went from having no charge to the new
indictment at this critical point, we find it is analogous to the "more serious charge" concept and
invokes the presumption of vindictiveness.

 Neal also points out that he lost the benefit of the plea bargaining agreement. The Ehl v.
Estelle case suggests that a change of plea bargaining position following the conviction and after the
defendant exercised a constitutional right to challenge that conviction gives a presumption of
prosecutorial vindictiveness. 656 F.2d 166, 169 (5th Cir. 1981). This is not the situation in the
present case, but nonetheless demonstrates that the use of plea bargaining and changes in the State's
position after agreement has been entered into by the defendant can create a presumption of
prosecutorial vindictiveness.

 When a defendant violates his or her plea bargaining agreement or rejects a plea bargaining
agreement, then the State is not bound by the terms of the plea bargaining agreement. In the present
case, there was no breach of the plea bargaining agreement or no rejection of the plea bargaining
agreement by Neal. Neal had executed the plea bargain agreement and did not get an opportunity
to enter his plea before the trial court based on the plea bargaining agreement. A plea bargaining
agreement has no effect until it is entered and accepted by the trial court. Dorsey v. State, 55 S.W.3d
227, 232 n.1 (Tex. App.-Corpus Christi 2001, no pet.) (until the trial court accepts a plea agreement,
the agreement is not binding on the parties).

 If events occurred after the time of the dismissal, this could alter the initial exercise of the
State's discretion in dismissing the case.  See Krezdorn, 718 F.2d at 1365. But if the State uncovers
additional information which suggests the basis for further prosecution, this is not prosecutorial
vindictiveness. Ex parte Bates, 640 S.W.2d 894 (Tex. Crim. App. 1982).

 When a claim of prosecutorial vindictiveness is raised, the record must be examined to see
if the prosecutorial conduct, in the light of the entire proceeding suggests that the conduct was
motivated by some purpose other than vindictiveness. In that event, no presumption of
vindictiveness attaches.  United States v. Wells, 262 F.3d 455 (5th Cir. 2001). 

 In the present case, the State indicated that some of the staff members from the sheriff's office
were displeased by the dismissal. The question then becomes whether this is a proper motivation
that would negate prosecutorial vindictiveness. Because both the State and the law enforcement
authorities participate on the side of the State in a joint effort to convict defendants, a suggestion
from parties connected with the State coming after the legal proceeding dismissing the charge could
not be considered as a factor negating the vindictiveness presumption. Further, no conduct by Neal,
other than obtaining the civil judgment, was shown. Thus, there was no evidence to overcome the
presumption of vindictiveness. This point is sustained.

 The conviction against Neal is reversed and the case dismissed for all purposes.




 Ben Z. Grant*

 Justice



*Justice, Retired, Sitting by Assignment



Date Submitted: June 19, 2003

Date Decided: August 20, 2003


Publish
1. Amendment V to the United States Constitution provides:


 No person shall be held to answer for a capital, or otherwise infamous crime,
unless on a presentment or indictment of a Grand Jury, except in cases arising in the
land or naval forces, or in the Militia, when in actual service in time of War or public
danger; nor shall any person be subject for the same offense to be twice put in
jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness
against himself; nor be deprived of life, liberty, or property, without due process of
law; nor shall private property be taken for public use, without just compensation.


U.S. Const. amend. V.

2. Although the Presentment of Indictment shows the year 2002, all other documents, including
the Indictment, suggest the correct year was 2001.