United States Court of Appeals,

Fifth Circuit.

No. 91-5623.

UNITED STATES of America, Plaintiff-Appellee,

v.

Elizabeth Nichols CHAGRA, Defendant-Appellant,

and

Jamiel Chagra, Movant-Appellant.

April 2, 1992.

Appeals from the United States District Court for the Western District of Texas.

Before JOLLY and EMILIO M. GARZA, Circuit Judges, and SHAW, District Judge.[*]

SHAW, Chief District Judge:

Petitioner appeals the denial of her motion for reduction of sentence. We affirm.

I. BACKGROUND

On April 15, 1982, Elizabeth Nichols Chagra ("Mrs. Chagra"), along with her husband Jamiel Chagra ("Jimmy"), her brother-in-law Joe Chagra and Charles Harrelson, was indicted for conspiring to commit first degree murder of a federal judge. Jimmy and Joe Chagra were also charged with first degree murder. On a motion by the Government, Jimmy's trial was severed from the other defendants; he was acquitted on both counts. Mrs. Chagra was tried and convicted and sentenced to 30 years in prison. She appealed her conviction.

[*]Chief District Judge of the Western District of Louisiana, sitting by designation.

Pending her appeal, Mrs. Chagra's husband Jimmy entered a plea of guilty in an unrelated matter. The sealed plea agreement provided in pertinent part that

> should Elizabeth Nichols Chagra properly move for a reduction in sentence pursuant to the provisions of Rule 35, Fed.R.Crim.P., if her conviction is affirmed by the United States Court of Appeals for the Fifth Circuit as a result of her now pending appeal, the United States shall recommend that the United States District Judge before whom said motion is pending reduce the total, aggregate sentence of 30 years, which she is presently serving in federal confinement, to a total, aggregate sentence of 20 years in the custody of the Attorney General of the United States.

On appeal, we reversed Mrs. Chagra's conviction for conspiracy to commit murder. *United States v. Harrelson,* 754 F.2d 1153, *reh'g denied,* 766 F.2d 186 (5th Cir.1985), *cert. denied,* 474 U.S. 908, 106 S.Ct. 277, 88 L.Ed.2d 241 (1985). We explained that since the criminal intent of premeditation and malice aforethought is an essential element of the underlying offense of first degree murder, "proof of premeditation and malice aforethought is also required to sustain a conviction of conspiracy to commit first degree murder...." *Harrelson,* 754 F.2d at 1172. Because the trial court's instructions allowed the jury to convict Mrs. Chagra of conspiracy to commit first degree murder without the requisite proof of premeditation and malice aforethought, we reversed her conviction and remanded for a new trial. *Id.* at 1174.

Following reversal of her conviction, Mrs. Chagra was indicted in a superseding indictment for conspiracy to commit second degree (unpremeditated) murder. *United States v. Chagra,* 807 F.2d 398, 400 (5th Cir.1986), *cert. denied,* 484 U.S. 832, 208 S.Ct. 106, 98

L.Ed.2d 66 (1987).  Mrs. Chagra's second trial resulted in a conviction, and she was sentenced to 30 years in prison.  Her second conviction was affirmed.  *Chagra,* 807 F.2d at 398.

Mrs. Chagra then filed a motion under Federal Rule of Criminal Procedure 35 [1] to reduce her sentence maintaining that the plea agreement entered into by Jimmy entitled her to a reduction of sentence.  When the district court denied her motion, she filed a motion to reconsider, and Jimmy intervened, filing a motion to specifically enforce his plea agreement.  Concluding that the plea agreement was to benefit Mrs. Chagra only if her first conviction was affirmed, the district court denied her Rule 35 motion, and this appeal followed.

## II. DISCUSSION

### A. Breach of the Plea Agreement

The Government maintains that the terms of the plea agreement are unambiguous and that by its terms the Government was obligated to recommend a reduction in Mrs. Chagra's sentence only if her first conviction was affirmed as a result of her "pending appeal."  Characterizing the Government's interpretation as "hypertechnical", Mrs. Chagra contends that she is entitled to a reduction in the

---

[1] For offenses committed prior to November 1, 1987, Rule 35 permitted a defendant to move for a reduction of sentence within 120 days after the sentence was imposed.  Rule 35 has subsequently been amended.

sentence she is now serving because the Government's agreement to reduce her sentence induced Jimmy to plead guilty.

The existence of a plea agreement is a factual issue to which the clearly erroneous standard of review is applied. *United States v. Williams,* 809 F.2d 1072, 1079 (5th Cir.1987), *cert. denied,* 484 U.S. 896, 108 S.Ct. 228, 98 L.Ed.2d 187 (1987); *United States v. Cain,* 587 F.2d 678 (5th Cir.1979), *cert. denied,* 440 U.S. 975, 99 S.Ct. 1543, 59 L.Ed.2d 793 (1979). Emphasizing that plea bargaining is "an essential component of the administration of justice," *Santobello v. New York,* 404 U.S. 257, 260, 92 S.Ct. 495, 498, 30 L.Ed.2d 427, 432 (1971), the Supreme Court cautioned that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello,* 404 U.S. at 262, 92 S.Ct. at 499.

"This circuit has applied the principles enunciated in *Santobello* by requiring that the government adhere strictly to the terms and conditions of the plea agreement it negotiates with defendants. *United States v. Shanahan,* 574 F.2d 1228 (5th Cir.1978); *United States v. Grandinetti,* 564 F.2d 723 (5th Cir.1977)." *United States v. Avery,* 621 F.2d 214, 216 (5th Cir.1980). A plea agreement "must have explicit expression and reliance and is measured by objective, not subjective, standards." *Johnson v. Beto,* 466 F.2d 478, 480 (5th Cir.1972). Applying an objective standard, we must "determine whether the government's

conduct is consistent with what [was] reasonably understood by [Jimmy] when entering [his] plea of guilty."  *United States v. Huddleston,* 929 F.2d 1030, 1032 (5th Cir.1991).

In his affidavit submitted in support of Mrs. Chagra's Rule 35 motion, Jimmy stated that he pled guilty because the Government agreed to reduce Mrs. Chagra's sentence "to a term not to exceed 20 years."  Further, he claimed that in a discussion relating to Mrs. Chagra's "appellate status" that he remembers stating:  " "[w]hatever happens at the end of everything, she [Elizabeth] doesn't end up with more exposure than twenty years.' "

First, we conclude that it was not reasonable for Jimmy to have understood that the district court was required to reduce Mrs. Chagra's sentence to 20 years.  Although the Government may recommend a particular sentence, " "such recommendation shall not be binding upon the court.' "  *United States v. Babineau,* 795 F.2d 518, 520 (5th Cir.1986) (quoting Fed.R.Crim.P. 11(e)(1)(B)).[2]

Next, we find that the language of the plea agreement was clear that "if [Mrs. Chagra's] conviction is *affirmed* ... as the result of her *now pending* appeal, the United States shall recommend that the ... Judge before whom said motion is pending reduce the total, aggregate sentence of 30 years, which she is presently

---

[2]Rule 11(e)(1)(B) provides in pertinent part that the Government will "make a recommendation ... for a particular sentence, with the understanding that such recommendation ... shall not be binding upon the court[.]"  Fed.R.Crim.P. 11(e)(1)(B).

serving in federal confinement, to a total, aggregate sentence of 20 years...." (emphasis added).  The precise language of the agreement imposes a limitation based upon the affirmation of Mrs. Chagra's prior conviction.  The agreement was not applicable once her conviction was reversed.  Given the unambiguous wording of the agreement, Jimmy could not have reasonably understood that the Government would recommend a reduction unless Mrs. Chagra's first conviction was affirmed.

We reject Mrs. Chagra's argument that the Government's interpretation of the plea agreement is "hypertechnical."  Rather, we find the Government's interpretation accurate and the only interpretation that can be reasonably construed.  The plea agreement specifically refers to Mrs. Chagra's "pending appeal" and her "total aggregate of 30 years which she is now serving in federal confinement...."  If Mrs. Chagra were successful in her appeal and retried, as she was, neither the Government nor Jimmy could predict that she would be convicted and if so, what her sentence would be after the new trial.

Indeed, the language of the plea agreement would not make sense if after her new trial Mrs. Chagra had been sentenced to 21 years imprisonment, and it would have been meaningless if she had been sentenced to 10 years imprisonment.  Moreover, Mrs. Chagra could have bargained for her own plea agreement.  As a result, we conclude that it was not reasonable for Jimmy to believe that the Government would recommend a reduction in Mrs. Chagra's sentence if

her appeal was successful.

B. Violation of Due Process

Additionally, Mrs. Chagra argues that the Government's interpretation of the plea agreement punishes her for the successful exercise of her statutory right to appeal. "[I]mposition of a penalty upon the defendant for having successfully pursued a statutory right of appeal ... [is] a violation of due process of law." *North Carolina v. Pearce,* 395 U.S. 711, 724, 89 S.Ct. 2072, 2080, 23 L.Ed.2d 656, 669 (1969).

Upon retrial after appeal, due process is offended only in those cases that "pose a realistic likelihood of "vindictiveness.' " *Blackledge v. Perry,* 417 U.S. 21, 27, 94 S.Ct. 2098, 2102, 40 L.Ed.2d 628, 634 (1974). Prosecutorial vindictiveness exists "if the prosecution acts arguably to punish the exercise of [the right to appeal], by increasing the measure of jeopardy by bringing additional or more severe charges, or where the judge assesses a larger penalty upon subsequent conviction for the same offense following an earlier reversal." *United States v. Ward,* 757 F.2d 616, 619-20 (5th Cir.1985).

No such circumstances exist here. The prosecutor did not bring additional or more severe charges nor did the judge impose a greater penalty for the same offense. In fact, after both trials

the judge imposed a sentence of 30 years.[3]  Consequently, we find that because no prosecutorial vindictiveness existed Mrs. Chagra's right to due process was not violated.

### III. CONCLUSION

We find no clear error in the district court's factual finding that the plea agreement was to benefit Mrs. Chagra only if her conviction was affirmed by this court;  therefore, the plea agreement was not breached.  Because no evidence of unconstitutional prosecutorial vindictiveness exists, we conclude that Mrs. Chagra's constitutional right of due process was not violated.  The decision of the district court is AFFIRMED.

---

[3]When a convicted defendant is retried after a successful appeal, "he ... run[s] the risk ... of receiving a sentence as severe as that previously imposed[,] and ... he ... run[s] the risk of being tried for a separate offense" without violation of due process.  *Pearce,* 395 U.S. at 731, 89 S.Ct. at 2091 (Douglas joined by Marshall, separate concurring opinion) (citations omitted).